**SO ORDERED.**

**SIGNED July 16, 2009.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

DUDLEY J. SELLERS, JR.
GLENDA M. SELLERS                          CASE NO. 08-50511

    Debtors                              Chapter 13

------------------------------------------------------------------
MEMORANDUM RULING
------------------------------------------------------------------

    The following matter came before the Court as an objection by
Tower Loan of Abbeville to a plan modification filed by Dudley and
Glenda Sellers ("Debtors"). Debtors seek to modify their Chapter
13 plan to surrender collateral securing debts owed to Tower Loan
and Magnolia Mortgage. Debtors' confirmed plan provided that the
collateral would be retained and the allowed secured claims paid
_pro rata_ through the plan. Magnolia did not object to the proposed
plan modification. Tower Loan objected on the grounds that
Debtors' proposed modification is not permitted by 11 U.S.C. §1329.

After considering the parties' submissions and the relevant authorities, the court is prepared to rule on Debtors' request to modify their plan.

## BACKGROUND

Debtors filed for relief under Chapter 13 on April 18, 2008. Debtors' Chapter 13 plan was confirmed on September 17, 2008. The confirmed plan provided that Debtors would retain collateral securing the claims of Magnolia Mortgage and Tower Loan. Magnolia Mortgage's claim was secured by a 1993 Oldsmobile Cutlass. Tower Loan timely filed a proof of claim for two debts secured by various household goods.[1] The confirmed plan provided that the allowed secured claims of Magnolia Mortgage and Tower Loan would be paid *pro rata* over the term of the plan pursuant to 11 U.S.C. §1325(a)(5)(B). The confirmed plan provided that the value of Magnolia Mortgage's collateral was $200, while the value of the collateral securing Tower Loan's claim was $2,784.00.

On December 2, 2009, Debtors filed a plan modification that reduces their monthly plan payments from $330 to $125. Debtors also filed an amended Schedule J showing that their medical

---

[1] Tower Loan's proof of claim identifies the following collateral: weed eater, blower, Sony digital camera, VCR/DVD combination player, 38" Zenith television, Dell desk-top computer, entertainment center, Browning 12 gauge automatic shotgun, riding lawnmower, punching bag, weight bench, 33" GE television, and a computer printer.

-2-

expenses increased by $150 per month. Debtors' proposed plan modification further provides for the surrender of the 1993 Oldsmobile and the collateral securing Tower Loan's claim pursuant to 11 U.S.C. §1325(a)(5)(C), and eliminates the *pro rata* payments to Magnolia Mortgage and Tower Loan. Magnolia Mortgage did not object to the modified plan. Tower Loan, however, field a timely objection to the proposed plan modification.

Tower Loan contends that the proposed modification and surrender of Tower Loan's collateral is barred by the confirmation of the original plan, and that Debtors cannot use section 1329 to alter the treatment of its claim. At the hearing on the plan modification, the court ordered Debtors to file a statement setting forth the reasons for their proposed plan modification. Debtors filed a statement in May 2009. This statement indicated that Mr. Sellers had suffered medical problems and incurred additional medical expenses, and that Debtors could no longer afford to pay for the collateral securing the claims at issue. These additional medical expenses are reflected on the amended Schedule J filed in December 2008.

## DISCUSSION

**A. The Standards for Plan Modification Under §1329(a).**

The post-confirmation modification of a Chapter 13 plan under 11 U.S.C. §1329 is an exception to the binding effect of plan confirmation. Once a Chapter 13 plan is confirmed, the provisions

of the confirmed plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). Under section 1327(a), a creditor who fails to object to a plan provision is bound by that provision even though the creditor may have successfully challenged the plan provision at confirmation through a timely-filed objection. See, e.g., IMPAC Funding Corp. v. Simpson (In re Simpson), 240 B.R. 559, 561 (B.A.P. 8th Cir. 1999). Some courts characterize the binding effect of a plan under the rubric of the res judicata doctrine. In other words, the confirmation of a plan is res judicata of all issues that were (or could have been) litigated at confirmation. See, e.g., In re Szostek, 886 F.2d 1405, 1408 (3d Cir.1989).[2]

Section 1329(a), however, limits the binding effect of a confirmed plan by providing specific grounds for the trustee, the

---

[2] As Judge Lundin has noted, use of the res judicata rubric is not entirely accurate because the binding effect of a confirmed Chapter 13 is not grounded in court-created principles of preclusion, but is statutorily defined in section 1327. See Keith M. Lundin, Chapter 13 Bankruptcy 3d ed., §229.1 (2000)(noting that "§1327(a) is a comprehensive *statutory* declaration of binding effect that is not dependent on or limited by the conventional rules for preclusion"). Moreover, the Fifth Circuit has held that other provisions of the Code may limit the binding effect of a confirmed plan on a secured creditor even where traditional principles of preclusion might otherwise bind the creditor. See, e.g., Sun Finance Co., Inc. v. Howard (In re Howard), 972 F.2d 639 (5th Cir. 1992).

-4-

debtor, or an unsecured creditor to request the modification of a confirmed plan. Sections 1329(a) and (b) provide:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>>
>> (2) extend or reduce the time for such payments;
>>
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan;
>
> . . .
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

Modification under section 1329 "is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." Meza v. Truman (In re Meza), 467 F. 3rd 874, 877 (5th Cir. 2006). In Meza, the Fifth Circuit rejected the requirement in some jurisidctions that debtors demonstrate a "substantial or unanticipated change in circumstances" as a threshold to modifying a plan under section 1329.

Courts have generally held that section 1329(a) sets forth the exclusive grounds for plan modification. *See*, *e.g.*, *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994). This reading of section 1329(a) reflects a careful balance between the policies favoring plan modification and the concern for finality reflected in section 1327. Even if a proposed modification falls within one or more of the categories set forth in section 1329(a), the proposed modification must also satisfy section 1329(b). Section 1329(b) applies four key provisions governing plan confirmation to plan modification: **sections 1322(a), 1322(b), 1323(c), and 1325(a)**. Section 1322 governs the contents of a plan. For example, section 1322(b) provides that a Chapter 13 plan may modify the rights of the holders of certain secured claims as well as provide "for the payment of all or part of claim against the debtor from property of the estate or property of the debtor." *See* 11 U.S.C. §1322(b)(2), 1322(b)(8). Section 1325 sets forth the requirements for confirming a plan, including the treatment of secured claims and the requirement that the plan "has been proposed in good faith." 11 U.S.C. §1325(a)(3), 1325(a)(5). Any proposed modification of a confirmed plan must satisfy each of the confirmation requirements of section 1325(a). Finally, section 1323(c) acknowledges that a plan modification may alter the treatment of a secured creditor. *See*, *e.g.*, 11 U.S.C. §1323(c).

-6-

**B.  Differing Views on Post-Confirmation Modification of Plans to Surrender Collateral.**

Courts are split on whether section 1329(a) allows a debtor to modify a plan to surrender collateral in full or partial satisfaction of a secured creditor's claim.  One line of cases follows the Sixth Circuit's decision in <u>Chrysler Financial Corp. v. Nolan (In re Nolan)</u>, holding that section 1329(a) does not permit the modification of a confirmed plan to surrender collateral. 232 F.3d 528 (6th Cir. 200).  Another line of cases rejects <u>Nolan</u>'s *per se* bar to modification.  These cases hold that a plan may be modified to surrender collateral if the proposed modification complies with sections 1322 and 1325(a), and the debtor has demonstrated cause for reconsideration of the affected creditor's claim under 11 U.S.C. §502(j). <u>See</u>, <u>e.g.</u>  <u>In re Zieder</u>, 263 B.R. 114 (Bankr. Ariz. 2001);  <u>In re Hernandez</u>, 282 B.R. 200 (Bankr. S.D. Tex. 2002).

In <u>Nolan</u>, the debtor's confirmed plan provided that she would retain a 1995 Mitsubishi Mirage that secured a claim held by Chrysler Financial.  Of Chrysler's total claim of $12,291, $8,200 was treated as secured and $4091 as unsecured pursuant to 11 U.S.C. §506(a).  The plan provided that the secured portion of Chrysler's claim would be paid in $208 monthly installments.  Almost a year after the confirmation of the plan, the debtor moved to modify her

-7-

plan and surrender the vehicle to Chrysler on the grounds that the
vehicle was unreliable. The bankruptcy court's approval of the
modification was subsequently reversed on appeal. The Sixth
Circuit ultimately held that the debtor could not modify the
confirmed plan to surrender collateral and change the treatment of
Chrysler's secured claim. The court reasoned that section 1329(a)
is narrowly tailored to allow only modifications that change the
timing and amount of payments made under the plan. According to
the court, the debtor's proposed modification went beyond merely
altering the stream of payments due under the plan, but instead
"re-classified" Chrysler's previously allowed secured claim as an
unsecured deficiency. The court concluded that the specific
grounds for modification in section 1329(a) do not permit
modifications that "alter, reduce or reclassify a previously
allowed secured claim." Id. at 532. The court further reasoned
that once a debtor makes an election to retain collateral and pay
a secured claim pursuant to section 1325(a)(5)(B), the creditor's
allowed secured claim is fixed at confirmation and cannot be
altered (or re-classified) through a plan modification. See 232
F.3d at 533 (holding that "the proposed modification would violate
section 1325(a)(5)(B), which mandates that a secured claim is fixed
in amount and status and must be paid in full once it is allowed.")
The court then observed that the modification proposed by the

-8-

debtor would allow the debtor to "reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risks voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan." Id. at 534. Some lower courts outside of the Sixth Circuit have followed Nolan in rejecting requests to modify a plan to surrender collateral under section 1329(a). See, e.g., In re Cameron, 274 B.R. 457, 459-60 (Bankr. N.D. Tex. 2002); In re Coffman, 271 B.R. 492 (Bankr. N.D. Tex. 2002); In re Arquin, 345 B.R. 876 (Bankr. N.D. Ill. 2006); In re Smith, 259 B.R. 323 (Bankr. S.D. Ill. 2001); In re Meeks, 237 B.R. 856 (Bankr. M.D. Fla. 1999); In re Coleman, 231 B.R. 397 (Bankr. S.D. Ga. 1999); In re Dunlap, 215 B.R. 867 (Bankr. E.D. Ark. 1997); In re Banks, 161 B.R. 375 (Bankr. S.D. Miss. 1993); In re Abercrombie, 39 B.R. 178 (Bankr. N.D. Ga. 1984).

A growing number of courts, however, have rejected Nolan's per se bar against post-confirmation modification to surrender collateral. Some courts focus on the court's power to reconsider a claim under 11 U.S.C. §502(j). See, e.g., In re Zieder, 263 B.R. 114 (Bankr. Ariz. 2001). According to these courts, section 502(j) allows courts to reconsider the allowance or disallowance of claims for cause at any time in the case. Thus, when a car or other collateral is surrendered after confirmation, the debtor may use section 502(j) to (1) reduce the creditor's previously allowed

secured claim to reflect the value of the collateral that was surrendered, and (2) re-classify the remainder of the creditor's previously allowed secured claim as an unsecured deficiency pursuant to section 506(a). <u>Zieder</u>, 263 B.R. at 117 (surrender of the collateral securing the creditor's claim is "is adequate cause to reconsider a previously allowed secured claim.") Other courts have concluded that <u>Nolan</u>'s reading of section 1329(a) is too narrow, and that the language of the section 1329(a) permits plan modification to surrender collateral as long as the proposed modification satisfies the requirements of sections 1322(a), 1322(b), 1323(c), and 1325(a). <u>See</u>, <u>e.g.</u>, <u>Bank One, N.A. v. Leuellen (In re Leuellen)</u>, 322 B.R. 648 (S.D. Ind. 2005). According to the <u>Leuellen</u> court, the plan modification at issue fell within section 1329(a)(1) because it reduced "the amount of payments on claims of a particular class provided for by the plan" by reducing the amount paid under the plan for the creditor's secured claim to reflect the surrender of the underlying collateral. <u>Id</u>. at 657. The <u>Leuellen</u> court also noted that section 1329(b) expressly applies section 1325(a) to a proposed plan modification, including the option to surrender collateral under section 1325(a)(5)(C). Other courts have similarly relied on section 502(j) and the language of sections 1329(a) and 1329(b) to approve plan modifications that surrender collateral. <u>See</u>, <u>e.g.</u>,

-10-

*In re Davis*, 404 B.R. 183 (Bankr. S.D. Tex. 2009); *In re Disney*, 386 B.R. 292, 298 (Bankr. D. Colo. 2008); *In re Berendt*, No. 07-35054, 2008 WL 4410995 at *2 (Bankr. D. Or. Sept. 22, 2008); *In re Ross*, 373 B.R. 656 (Bankr. W.D. Mo. 2007); *In re Marino*, 349 B.R. 922 (Bankr. S.D. Fla. 2006); *In re Taylor*, 297 B.R. 487 (Bankr. E.D. Tex. 2003); *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002); *In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002); *In re Townley*, 256 B.R. 697 (Bankr. D.N.J. 2000); *In re Day*, 247 B.R. 898 (Bankr. M.D. Ga. 2000); *In re Johnson*, 247 B.R. 904 (Bankr. S.D. Ga. 1999); *In re Frost*, 96 B.R. 804 (Bankr. S.D. Ohio 1989); *In re Stone*, 91 B.R. 423 (Bankr. N.D. Ohio 1988).

## C.  Does Section 1329 Allow A Post-confirmation Modification to Surrender Collateral?

Both sides of this debate have support for their positions. The court agrees with the strong policy concerns voiced in *Nolan* concerning the finality of confirmation and the danger that a plan modification may unfairly shift the risk of depreciation to a secured creditor.  However, this question must ultimately be resolved by the language of the relevant provisions of the Code, including the provisions governing confirmation (sections 1322 and 1325), plan modification (sections 1323(c) and 1329), and the claims allowance process (section 502).  Considering these provisions as a whole, the court agrees with the *Zieder* and

-11-

<u>Leuellen</u> line of cases that <u>Nolan</u>'s narrow reading of section 1329(a) is not supported by the Code.

A modification to surrender collateral changes the confirmed plan by reducing the stream of payments due to the secured creditor to zero and, depending on the circumstances of the case, treating the remaining deficiency as an unsecured claim. The court agrees with <u>Leuellen</u> that such a modification falls squarely within sections 1329(a)(1) and 1329(a)(3). With respect to section 1329(a)(1), the modification reduces "the amount of payments on claims of a particular class provided for by the plan." Most courts recognize that each secured claim should be treated as a separate class for purposes of the plan because the terms of each secured claim differ with respect to interest rate, collateral value, and monthly payment. Accordingly, each allowed secured claim receives a different treatment in a plan. <u>See</u>, <u>e.g.</u>, <u>In re Eason</u>, 181 B.R. 127, 135 (Bankr. N.D. Ala. 1985); <u>In re Powell</u>, 15 B.R. 465 (Bankr. N.D. Ga. 1981); <u>Leuellen</u>, 322 B.R. at 657 ("The more persuasive view, however, is that each secured creditor should be considered as a separate class, permitting the debtor to treat each secured creditor individually.") With respect to section 1329(a)(3), a modification seeking to surrender collateral alters "the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of

-12-

any payment of such claim other than under the plan." The
surrender of collateral is a payment to the creditor in the form of
the value represented by the collateral, and is a payment "other
than under" the confirmed plan. See Davis, 404 B.R. at 194 ("A
Debtor's surrender of collateral to a creditor is unquestionably a
form of 'payment'"); Hernandez, 282 B.R. at 207 (same) (citing
Matter of Sandy Ridge Development Corp., 881 F.3d 1346 (5th Cir.
1989)). A plan modification addressing surrender, therefore,
reduces the distribution to the affected creditor to reflect the
surrender.

With due respect, Nolan's position that a modification to
surrender collateral improperly "re-classifies" the secured
creditor's claim does not fully consider the relationship between
the Code provisions governing plan confirmation and claims
allowance. Under 11 U.S.C. §502, a proof of claim is deemed
allowed unless a party in interest objects to the claim. While
section 502 governs the allowance of a secured claim, section
506(a) governs the determination and treatment of a secured claim:
"An allowed claim of a creditor secured by a lien on property in
which the estate has an interest ... is a secured claim to the
extent of the value of such creditor's interest in the estate's
interest in such property ... and is an unsecured claim to the
extent that the value of such creditor's interest ... is less than

-13-

the amount of such allowed claim." 11 U.S.C. §506(a). The claims allowance process and section 506(a) intersect with the plan confirmation (and modification) process, in part, through section 1325(a)(5). If the debtor's plan provides that collateral will be surrendered under 1325(a)(5)(C), the creditor's claim is paid to the extent of the value of the collateral surrendered, and any deficiency balance is treated as an unsecured claim. Leuellen, 322 B.R. at 654. If the debtor elects to retain the collateral, the secured creditor is paid the value of its allowed secured claim – as determined by section 506(a) – pursuant to section 1325(a)(5)(B). Section 1325(a)(5)(B) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan" must not be "less than the allowed amount of such claim."

Nolan, however, take this process one step further: once the original plan is confirmed, a creditor's secured claim and the treatment of that claim is fixed and cannot be modified under section 1329. With due respect to the Nolan panel, this conclusion is not supported by the text of section 1329, and does not consider section 502(j). According to the Fifth Circuit, "a proof of secured claim must be acted upon - - that is allowed or disallowed - - before confirmation of a plan or the claim must be deemed allowed **for purposes of the plan**." Simmons,765 F.2d at 553.

-14-

However, under Section 502(j), a claim "that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. §502(j). This provision further states that a "reconsidered claim may be allowed or disallowed according to the equities of the case." Id. Many of the courts rejecting the Nolan approach have done so on the basis that section 502(j), in conjunction with 506(a), allows for the reconsideration and re-classification of previously allowed secured claims in cases where collateral has been surrendered or repossessed after confirmation. See, e.g., Zieder, 263 B.R. at 116-117; Davis, 404 B.R. at 194-195. Nothing in the language of sections 1329, 1325(a), 502(j), or 506(a) preclude the reconsideration of a claim in this manner after confirmation. As Judge Bohm has recently noted:

> [T]he notion that § 1329 is the sole authority for modification of a Chapter 13 plan, while true, does not somehow extinguish other sections of the Bankruptcy Code-such as § 502(j) and § 506(a)-which continue to apply post-confirmation. The contention that § 1329 renders § 502(j) and § 506(a) null and void once a plan is confirmed not only contradicts the plain language of those sections, but also reads language into § 502(j) and § 506(a) that is not there (i.e., that those sections apply in a Chapter 13 case only until the plan is confirmed).

Davis, 404 B.R. at 194. Furthermore, section 1329(b) expressly applies section 1325(a) – including the option to retain or surrender collateral provided under section 1325(a)(5) – to plan modification. Thus, by the express terms of section 1329, a

-15-

proposed plan modification can elect to either retain or surrender collateral. Nothing in 1329 or 1325(a)(5) indicates that plan modification should be treated any differently than plan confirmation with respect to the treatment of secured claims. <u>See</u> <u>Hernandez</u>, 282 B.R. at 206 (the reasoning of <u>Nolan</u> creates the anomaly that "plan modification cannot do what plan confirmation can do," even though section 1329 "explicitly incorporates by reference the plan design rules and requirements applicable to plan confirmation.") Moreover, the view that modification under section 1329 cannot alter the treatment of a secured claim ignores section 1323(c). Section 1323(c) acknowledges that a plan modification may alter the treatment of secured creditors.[3] Although section 1323 governs pre-confirmation modifications, section 1329(b) expressly applies 1323(c) to post-confirmation modifications.

   <u>Nolan</u>'s reading of section 1329 would also have the anomalous effect of requiring that a creditor who has obtained possession of and sold its collateral continue to receive payments as a secured creditor under the confirmed plan even though the creditor is no

---

   [3] Section 1323(c) provides: "Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, **<u>unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification</u>**, and such holder changes such holder's previous acceptance or rejection." (emphasis added).

-16-

longer secured under section 506(a). See Davis, 404 B.R. at 195 (such a result "turns the Code on its head") (quoting In re Lane, 374 B.R. 830, 837 (Bankr. D. Kan. 2007)). This result not only affects the feasibility of a debtor's plan, it prejudices unsecured creditors by providing more favorable treatment for what would otherwise be an unsecured deficiency claim.

Nolan also bases its decision on a concern that allowing a debtor to modify a plan to surrender collateral "unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan." 232 F.3d at 534. The court agrees with Nolan that a post-confirmation modification to surrender collateral that unfairly prejudices a secured creditor should be denied. However, Nolan goes even further in assuming that all such modifications are *per se* prejudicial and should be barred. There are at least two flaws in this assumption. First, as many courts have noted, secured creditors generally bear some degree of risk that collateral will depreciate over the life of a Chapter 13 case. See, e.g., Leuellen, 322 B.R. at 660 (noting that the "risk of depreciation of collateral is a risk that a secured creditor always bears"). The Code includes protections intended to minimize this risk, such as pre-confirmation adequate protection payments and the requirement of section 1325(a)(5)(B)(iii)(I) that payments to a creditor whose

claim is secured by personal property "provide to the holder of such claim adequate protection during the period of the plan." <u>Id.</u> at 658 – 59 (discussing the mechanisms available to protect the interests of secured creditors). In contrast, unfair prejudice may arise where depreciation is extraordinary and results from the actions of the debtor. The most often cited example is the case of a debtor who wrecks a car after confirmation and then attempts to surrender the car to the creditor even though the debtor did not maintain insurance as required by his loan agreement. <u>See</u>, <u>e.g.</u>, <u>In re Butler</u>, 174 B.R. 44, 48 (Bankr. M.D.N.C. 1994). These circumstances do not exist in every case.

Second, unfair prejudice can be addressed on a case-by-case basis under sections 1325(a)(3) and 502(j). Section 1325(a)(3) requires that plans be proposed in good faith. Similarly, section 502(j) requires a showing of cause and consideration of the equities of the case before a claim may be reconsidered. Both provisions allow a court to consider whether a proposed modification under section 1329 – and the reconsideration of an allowed secured claim under section 502(j) – will unfairly prejudice a creditor. If so, the court may deny the modification.

In sum, the court agrees with the cases that allow post-confirmation modification to surrender collateral if the modification is consistent with the requirements for confirmation

-18-

and reconsideration under section 502(j). Accordingly, there is no *per se* bar to the modification sought by Debtors in the present case.

**D.  Have Debtors Satisfied the Requirements of Sections 1329 and 502(j)?**

Most of the cases addressing modification under section 1329 turn on the circumstances of each particular case. However, the critical factors that a court should consider in ruling on a proposed plan modification can be distilled from these decisions. A court should first consider a debtor's reasons for plan modification. To satisfy the good faith requirement of 1325(a)(3) and establish cause under §502(j), debtors must demonstrate (1) that a post-confirmation change in circumstances has occurred, and (2) that this change in circumstances justifies the proposed plan modification. A debtor cannot justify a post-confirmation surrender and plan modification based on circumstances and considerations present when the original plan was confirmed. Similarly, the court will consider the extent to which, in light of a post-confirmation change in circumstances, the modification is necessary for the debtor to fund a plan. The requirement that a debtor establish a post-confirmation change in circumstances reconciles the policy concerns of <u>Nolan</u> – the finality of plan confirmation and the fair allocation of risk – with the recognition

-19-

by the Fifth Circuit that "during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." <u>Meza</u>, 467 F. 3rd at 877.[4]

Next, a court should consider whether the proposed modification will unfairly prejudice the affected creditor. Some of the factors that the court will consider include:

- the extent of any post-confirmation depreciation in the collateral securing the affected creditor's claim, and whether the depreciation is the fault of the debtor;

- whether the debtor failed to maintain insurance as required by a loan agreement or an adequate protection order; <u>see</u>, <u>e.g.</u>, <u>Butler</u>, 174 B.R. at 48

- the proposed treatment of the creditor's deficiency claim (if any such claim exists); <u>see</u>, <u>e.g.</u>, <u>Davis</u>, 404 B.R. at 191 (proposed surrender in full satisfaction of the creditor's claim was not equitable considering the circumstances of the case)

- whether the debtor is current on plan payments; and

- the length of time between plan confirmation and the filing of the proposed modification.

The touchstone in weighing these factors is whether the proposed modification will *unfairly* prejudice the affected creditor. As

---

[4] In <u>Meza</u>, the Fifth Circuit rejected the requirement in some jurisdictions that a debtor establish an "unanticipated, substantial change" in circumstances as a threshold requirement for modification under section 1329. The modification at issue in the present case, however, requires not only the application of the "good faith" requirement of section 1325(a)(3), but also the equitable determination that must be made under section 502(j). Under these circumstances, it is appropriate to require a debtor to make some showing of changed circumstances justifying relief under section 502(j).

-20-

explained previously, a secured creditor always bears some measure of risk that collateral will depreciate. Accordingly, the fact that collateral may depreciate post-confirmation alone is not evidence that a secured creditor would be unfairly prejudiced if the debtor has otherwise complied with the terms of the confirmed plan.

Turning to the present case, Debtors' May 2009 statement explains that Mr. Sellers has been diagnosed with a medical condition, and that this condition will increase Debtors' monthly medical expenses. This explanation is consistent with the Schedule J filed in December 2008 showing an increase in medical expenses from $250 per month to $400 per month and a decline in disposable income from $270 per month to $120 per month. This increase in medical expenses is a post-confirmation change in circumstances. Moreover, Debtors' amended Schedule J shows that the confirmed plan is no longer feasible based on the increased expenses. In sum, the Debtors have demonstrated a post-confirmation change in circumstances that supports the proposed modification to surrender Tower Loan's collateral.

With respect to unfair prejudice, the original plan was confirmed in September 2008 and the proposed plan modification was filed in December 2008 - only a three-month gap between confirmation and the proposed modification. Although Tower Loan

contends that its collateral suffered nine months of depreciation after the filing of the petition, much of that depreciation occurred pre-confirmation and could have been addressed with an adequate protection order or provisions in the confirmed. There is nothing in the record showing any unusual or significant depreciation between confirmation in September 2008 and the date Debtors filed a modified plan. Nevertheless, the record is unclear as to the current condition of all of the collateral securing Tower Loan's claim. Debtors' schedules, as well as their proposed plan modification, only identify some of the items of collateral securing Tower Loan's claim. This suggests that Debtors' may not be in a position to account for (and ultimately surrender) all of the collateral securing Tower Loan's claim. If Tower Loan's collateral has been lost or destroyed, this fact may preclude the proposed modification. The court cannot make this determination based on the current record. Given that Debtors have satisfied the other requirements for modification, the court will allow Debtors the opportunity to supplement the record to address Tower Loan's collateral. The court will reset confirmation and require Debtors to submit a statement or other evidence with respect to the condition of the collateral securing Tower Loan's claim.

-22-

### CONCLUSION

For the reasons stated above, **the Court resets the hearing on Debtors' proposed modified plan for 8:30 a.m. on August 5, 2009.** Debtors are to provide a statement or other evidence identifying the items of collateral they are seeking to surrender as well as the current condition of those items within ten days from the date of this Memorandum Ruling.

**IT IS SO ORDERED.**

###